**Ynez S. CUEVAS, Petitioner,**

v.

**Lawrence E. WILSON, Warden of California State Prison, San Quentin, California, et al., Respondent.**

**Civ. No. 44195.**

United States District Court
N. D. California, S. D.
Sept. 19, 1966.

F. Conger Fawcett, San Francisco, Cal., for plaintiff.

Thomas C. Lynch, Atty. Gen., State of California, San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION AND ORDER ON HABEAS CORPUS

WEIGEL, District Judge.

Ynez S. Cuevas, an inmate at San Quentin state penitentiary, has filed in this Court a petition for a writ of habeas corpus in which he alleges that he is presently in custody in violation of his federal constitutional rights. Pursuant to the requirements of 28 U.S.C. § 2243, this Court issued an Order To Show Cause, respondent filed his return and, after counsel was appointed to represent

petitioner, an evidentiary hearing was held before this Court on June 7, 1966. For the reasons stated below, the Court has concluded that the writ of habeas corpus should be granted. This Memorandum of Decision is intended to incorporate the Court's findings of fact and conclusions of law.

Petitioner is presently in state custody by virtue of his conviction, on May 2, 1963, of two counts of unlawful sale of heroin, which is a felony under California Health and Safety Code § 11501. Concurrent sentences of imprisonment for a period of ten years to life were imposed on petitioner under a provision of Section 11501 which requires the state court to impose a heavier sentence on a defendant who has previously been convicted of a similar felony offense.[1] The only prior conviction alleged and proved against petitioner was a 1958 California state court conviction for unlawful possession of marihuana in violation of California Health and Safety Code § 11500. Petitioner's prior conviction took place on September 2, 1958, at which time he withdrew a previously entered plea of not guilty and entered a new plea of guilty before the Honorable Robert Gardner, Judge of the Superior Court of the State of California in and for the County of Orange.[2] It is undisputed that at the time petitioner entered his plea of guilty, he was not represented by counsel.

---

1. "Except as otherwise provided in this division, every person who transports, imports into this State, sells, furnishes, administers or gives away, or offers to transport, import into this State, sell, furnish, administer, or give away, or attempts to import into this State or transport any narcotic other than marijuana except upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this State shall be punished by imprisonment in the state prison from five years to life, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than three years in prison.

 If such a person has been previously convicted once of any felony offense described in this division or has been pre-

viously convicted once of any offense under the laws of any other state or of the United States which if committed in this State would have been punishable as a felony offense described in this division, the previous conviction shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or is admitted by the defendant, he shall be imprisoned in a state prison from 10 years to life, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than 10 years in prison."

2. Respondent's Exhibit G. The relevant court proceedings of September 2, 1958, are set out in full in Appendix A hereof.

Petitioner now claims that his 1958 conviction was invalid because he was deprived of his constitutional right to counsel when he changed his plea, clearly a critical stage of the criminal proceedings against him.[3] Although he raises no challenge to the subsequent 1963 conviction, petitioner claims that the sentence imposed under that conviction is invalid because it was based on a constitutionally invalid prior conviction. If petitioner had been sentenced as a first time offender in 1963, his sentence of imprisonment would have been for a period of five years to life, and he would be eligible for parole after serving three years of that sentence. Petitioner now has served more than three years of his 1963 sentence, and he claims that but for the fact that he was illegally sentenced as a second offender, he would be entitled to apply for immediate release on parole.[4]

*Jurisdiction*

At the outset, the Court is met with respondent's claim that the Court has no jurisdiction to entertain this petition for a writ of habeas corpus because petitioner is presently confined pursuant to an admittedly valid conviction and would not be entitled to immediate release even if the Court were to set aside his prior conviction. Respondent relies on the well-established doctrine of McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). In McNally v. Hill, the Supreme Court of the United States held that a federal prisoner confined pursuant to sentences imposed under two counts of a three count conviction could not use habeas corpus to challenge the validity of his conviction on count three because he had not yet begun serving the sentence imposed under count three. In rejecting the petitioner's argument that he be allowed to challenge the validity of the count three conviction so that he could establish his present eligibility for parole, the Court held that petitioner was then lawfully in custody on two other counts of his conviction and that "[t]here is no warrant in either the statute [now 28 U.S.C. § 2241(c) (2)] or the writ for its use to invoke judicial determination of questions which could not affect *the lawfulness of the custody and detention* \* \* \*." 293 U.S. at 137, 55 S.Ct. at 27. (Emphasis added.)[5]

■ It is clear that neither the facts nor the legal principles of McNally v. Hill, control the disposition of the present case. The petitioner here attacks not

---

3. Constitution of the United States, Amendments VI and XIV; White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); Davis v. Holman, 354 F.2d 773, 775 (5th Cir. 1965), cert. den., 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 359.

The transcript of the relevant court proceedings of September 2, 1958 is set out in full in Appendix A hereof.

4. See California Health and Safety Code § 11501, set out in note 1, supra.

Petitioner also claims that absent his 1958 conviction, it is quite likely that upon his conviction in 1963, he would have been treated as a narcotics addict under California Penal Code § 6451 (now California Welfare and Institutions Code § 3051). Eligibility for treatment as an addict under this provision depends at least

in part on the applicant's prior criminal record. If petitioner had received treatment pursuant to § 6451, he would be eligible now for release under the terms of California Welfare and Institutions Code § 3200 (formerly California Penal Code § 6520). It is not at all clear from the pleadings on file in this proceeding whether in 1963 petitioner was "addict[ed] or by reason of repeated use of narcotics \* \* \* [was] in imminent danger of becoming addicted to narcotics" within the meaning of California Welfare and Institutions Code § 3051. This issue was not touched upon during the evidentiary hearing.

5. The Supreme Court also suggested that the petitioner in *McNally* had chosen the wrong remedy and that he should have sought a writ of mandamus directed to the Parole Board to compel it to consider his application for parole. 293 U.S. at 140, 55 S.Ct. 24. This suggestion has no application to the present case.

only his prior conviction, but also the subsequent 1963 sentence, the length and terms of which are governed at least in part by the prior conviction. Insofar as petitioner attacks the sentence he is presently serving as unlawfully based on a prior unconstitutional conviction, he alleges that he is "in custody in violation of the Constitution or laws * * * of the United States," within the meaning of 28 U.S.C. § 2241(c).

The applicable case law, while not entirely free from ambiguity, supports the position that the court has jurisdiction to entertain the present petition. In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), the Supreme Court held that a petitioner on parole from a state prison could use federal habeas corpus to attack the constitutionality of a prior conviction which had provided the basis for a third-offender sentence subsequently imposed on him. Like the petitioner in the present case, Jones did not challenge the validity of his subsequent *conviction*, but only the validity of the third-offender *sentence* insofar as it was based on an allegedly invalid prior conviction. The Court held that a person on parole is "in custody" within the meaning of 28 U.S.C. § 2241 and, therefore, the Federal District Court had jurisdiction to hear and determine the issues relating to the validity of his present sentence. It is true that Jones, unlike the petitioner here, was already at liberty on parole when he brought his petition for habeas corpus. However, the fact that the Supreme Court focused on the custody issue, rather than on the question of the petitioner's right to immediate release, and the fact that Cuevas will be immediately *eligible* for parole if his prior conviction is set aside and he is resentenced

under Section 11501,[6] indicates that there is no substantial distinction between the principles governing Jones v. Cunningham, supra, and those governing the present case. Furthermore, the Court of Appeals for the Second Circuit has held recently that "a prior [state court] conviction may be invalidated upon federal habeas corpus by a prisoner serving an increased sentence under a second-offender statute." United States ex rel. Durocher v. LaVallee, 330 F.2d 303, 306 (2d Cir. 1964), cert. den., LaVallee v. Durocher, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048. Accord: United States ex rel. Easterling v. Wilkins, 303 F.2d 883 (2d Cir. 1962). It is not clear whether the petitioners in *Durocher* and *Easterling* had a right to immediate release or were eligible for parole at the time they filed their habeas corpus petitions. The court did not discuss this point; nor did it cite McNally v. Hill, supra, quite possibly because it did not believe that the *McNally* doctrine was relevant to the second offender sentence situation. The Court of Appeals for the Second Circuit based its holdings in *Durocher* and *Easterling* on the ground that it is constitutionally impermissible to use an unconstitutional prior conviction as a basis upon which to sentence a defendant under a multiple offender statute. Therefore, when a prior sentence is so used, its validity must be open to attack by way of habeas corpus.[7]

Petitioner's right to apply for the writ of habeas corpus is even stronger here because the alleged invalidity of his prior conviction "currently substantially impinges upon the applicant's liberty." Tucker v. Peyton, 357 F.2d 115, 117 (4th Cir. 1966). Clearly, the sentence under which petitioner is confined at present is inseparable from his prior convic-

---

6. See note 4 and accompanying text.

7. The court has not been cited to, nor has its own research disclosed, any case from the Court of Appeals for the Ninth Circuit which deals with the precise jurisdictional issues raised here. See, e. g., King v. State of California, 356 F.2d 950 (9th Cir. 1966); Collins v. Klinger, 353 F.2d 731 (9th Cir. 1965); Wells v. People of State of California, 352 F.2d 439 (9th Cir. 1965); Wilson v. Gray, 345 F.2d 282 (9th Cir. 1965), cert. den., 382 U.S. 919, 86 S.Ct. 288, 15 L.Ed.2d 234. Cf., Boydston v. Wilson, 365 F.2d 238 (9th Cir. August 23, 1966).

tion.[8] In such a situation, the doctrine of McNally v. Hill, supra, does not apply. This court has jurisdiction to entertain the habeas corpus petition and to decide whether petitioner was in fact deprived of his constitutional right to counsel at the time of his prior conviction.[9]

### Deprivation of Right to Counsel on Prior Conviction

■ The petitioner claims that he was deprived of his constitutional right to have the assistance of counsel at critical stages of the proceedings against him, particularly on September 2, 1958, when he withdrew his plea of not guilty and entered a plea of guilty to the charge of unlawful possession of marihuana.[10] The applicable legal principles which are dispositive of petitioner's claim are clear. If, at critical stages of the crim-

inal proceedings against him, petitioner was financially unable to retain counsel, he had a constitutional right to have appointed counsel provided by the state. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The right to counsel announced in *Gideon* is retroactive; it applies to convictions which became final prior to the date on which *Gideon* was decided. Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964); Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 81, 11 L.Ed.2d 41 (1964). The entering of a plea of guilty is a critical stage in a criminal proceeding, and the right to counsel announced in *Gideon* must be granted at this stage of the proceeding. Davis v. Holman, 354 F.2d 773 (5th Cir. 1965), cert. den., 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 359. See White v. State of

8. Compare Browning v. Crouse, 327 F.2d 529 (10th Cir. 1964), cited by the respondent, where the court refused to entertain a petition for habeas corpus directed at a prior conviction because the petitioner was serving admittedly valid sentences for robbery which were separable from the multiple offender sentence which he sought to attack by his petition. In subsequent cases, the Court of Appeals for the Tenth Circuit has indicated that it will not entertain habeas corpus petitions directed at prior convictions unless the applicant shows that he has a right to immediate release from custody or would be immediately eligible for parole should his prior conviction and the subsequent multiple offender sentence be set aside. Carpenter v. Crouse, 358 F.2d 701 (10th Cir. 1966); See Browning v. Crouse, 356 F.2d 178 (10th Cir. 1966).

9. Even if the teaching of McNally v. Hill, supra, were broad enough to apply to the issues raised here, it has recently been suggested by Judge Sobeloff that *McNally* is no longer good law. Martin v. Com. of Virginia, 349 F.2d 781 (4th Cir. 1965) (en banc). In *Martin*, the court allowed a state prisoner to challenge a conviction and sentence which he had not yet begun to serve because the subsequent conviction barred his present eligibility for parole. The court discussed recent Supreme Court cases dealing with the question of "custody" within the meaning of 28 U.S.C. § 2241 and decided that Jones v. Cunningham, supra, and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.

2d 837 (1963), were inconsistent with the *McNally* view of custody. The court concluded that the *McNally* rationale, in regard to the use of habeas corpus to establish present eligibility for parole, rested on a now too narrow definition of the term "unlawfully in custody," and, therefore, *McNally* should not be followed blindly but rather should be read in context with the more recent Supreme Court cases dealing with the scope of federal habeas corpus. And see, Tucker v. Peyton, 357 F.2d 115 (4th Cir. 1966); Johnson v. Avery, 252 F.Supp. 783 (M.D.Tenn.1966).

10. California Health and Safety Code § 11500.

Petitioner also claims that he was denied his right to counsel at sentencing on September 26, 1958. The transcript of that proceeding shows that the trial court twice asked petitioner whether he wished to proceed without counsel, and petitioner twice indicated that he did wish to so proceed. Respondent's Exhibit H. However, in light of prior court proceedings, it is clear that at the time petitioner was sentenced, he believed that he no longer had a right to have counsel provided by the state. Since the court now holds that petitioner did have that right, it is doubtful whether petitioner's responses to the trial court on September 26 constitute an effective waiver of a known constitutional right to counsel. See Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Cf. Wilson v. Harris, 351 F.2d 840 (9th Cir. 1965), cert. den., 383 U.S. 951, 86 S.Ct. 1213, 16 L.Ed.2d 213. The right to counsel, like other federal constitutional rights, may be waived, but in order to establish that petitioner waived his right to counsel, respondent must prove "an intentional relinquishment or abandonment of a known right or privilege" on petitioner's part. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). See Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963); Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The mere entering of a plea of guilty does not constitute a waiver *per se* of the right to counsel. Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945).

Turning now to the facts of the present case as established at the evidentiary hearing held before this court, it is undisputed that at some time following petitioner's arrest in June of 1958, the Public Defender's Office of Orange County was appointed to represent petitioner. A representative of this office, Mr. Frank Williams, interviewed petitioner at the county jail on June 16, 1958, and appeared in court with petitioner to enter a plea of not guilty on June 20, 1958.[11] Furthermore, on July 2, 1958, at petitioner's request, Mr. Williams provided petitioner with a copy of the grand jury minutes in his case.[12]

Petitioner was released on bail on or about July 3, 1958. On July 29, 1958, he appeared in court with the then Public Defender of Orange County, Mr. Richard Sullivan. Petitioner was told by the trial court: "You have now bailed out and I believe that it is no longer a case for the Public Defender."[13] The court thereupon relieved the public defender's office from further representation of petitioner and asked petitioner whether he wished to secure the services of his own attorney. Petitioner indicated that he did wish to secure the services of an attorney, and the court then set September 2, 1958, as the date for petitioner's trial.[14]

Petitioner appeared in court, before the same judge, without an attorney on September 2 and indicated, through the Deputy District Attorney who was prosecuting the case, that he wished to withdraw his earlier plea of not guilty and enter a new plea of guilty to unlawful possession of marihuana. After some discussion as to the charge and petitioner's understanding of it, the trial court accepted and entered his plea of guilty. Although the Deputy District Attorney told the trial court that "at one time the Public Defender represented him [the petitioner] and he was to get an attorney and has not done so,"[15] the trial court did not ask petitioner whether he had an attorney, whether he could afford to retain an attorney or whether he wished to proceed without an attorney.[16] The record shows no attempt by the trial court to fulfill its "serious and weighty responsibility * * * of determining whether there is an intelligent and competent waiver [of counsel] by the accused." Johnson v. Zerbst, supra, 304 U.S. at 465, 58 S.Ct. at 1023. More important, the record shows affirmatively that petitioner did not in fact waive his right to counsel at the September 2 proceeding.

Respondent cannot now claim that the state had no duty to furnish petitioner with counsel after the Public Defender was relieved of his duty of representation on July 29. It is true that the question of whether a particular

---

11. Tr. 54, line 18—55, line 4; Respondent's Exhibit C.

12. Respondent's Exhibit C.

13. Respondent's Exhibit I, p. 4.

14. Id. at 4, 5.

15. Respondent's Exhibit G, p. 2.

16. The entire transcript of the relevant proceedings on September 2, 1958, is set out in Appendix A hereof.

defendant is indigent is ordinarily one for the trial court. However, the issue of indigency is so bound up with the federal constitutional right of a defendant to be provided with counsel if he cannot afford to retain counsel that a Federal District Court cannot be foreclosed from making an independent evaluation of the facts relevant to the issue of indigency. This is particularly true where, as here, the state trial court apparently made no such evaluation, but instead relied solely on the fact that petitioner had posted bail in determining that he was no longer entitled to be represented by the Public Defender.[17] See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The facts clearly show that petitioner was an indigent under any meaningful definition of the term. He had been employed only sporadically prior to his arrest,[18] and an affidavit which he filed shortly after arrest showed that he had no assets.[19] He was released on bail only because his mother made a $100 downpayment on his $250 bail bond premium and put up her own property as collateral for the balance of the premium.[20] Petitioner testified that after he was released on bail, he tried to get an attorney but found that he could not afford one and that he decided to plead guilty on September 2 only because he had been unable to retain an attorney.[21]

■ Furthermore, even if this Court were to accept the argument that peti-

tioner was not an indigent, this would not excuse the failure of the state trial court to inquire on September 2 as to whether he wished to proceed without an attorney. Petitioner's mere appearance in court without counsel cannot be deemed to constitute an effective waiver of his right to the assistance of either appointed or retained counsel.

■ Respondent contends, however, that petitioner's conduct between the time he was released on bail and the time he appeared in court on July 29 constitutes a waiver or an abandonment of his right to counsel and, particularly, of the services of the Public Defender. Respondent points to the fact that petitioner made no attempt to get in touch with the Public Defender's Office during this time and that he failed to answer a letter sent to him on July 22 by Mr. Sullivan. The court has carefully examined the testimony and exhibits presented at the evidentiary hearing and is convinced that petitioner did not waive or abandon his right to counsel or his right to representation by the Public Defender, either by conduct or in any other manner. In the first place, petitioner testified that he never understood fully that the Public Defender was acting as his lawyer.[22] Petitioner is a Mexican-American with a ninth grade education. At the time of his arrest in 1958, he was 19 years old and had virtually no prior experience with the criminal law.[23] He was ar-

17. Mr. Sullivan, who was then the Public Defender of Orange County, testified that his office probably had a two-fold reason for requesting to be released as petitioner's counsel. "Number one, Mr. Cuevas was free on bail * * * and might be able to get his own counsel. Number two was the fact that Mr. Cuevas had not responded to my letter when I tried to get in touch with him and then had failed to appear for trial on the date set for trial." Tr. 74, lines 6–16. However, it was the trial court, not the Public Defender's Office, which relieved the Public Defender of the duty of representing petitioner, and the only reason given by the court for this decision was the fact that petitioner had made bail. See Respondent's Exhibit I.

18. Tr. 10, line 25—11, line 11.

19. Petitioner's Exhibit 1.

20. Tr. 11, line 12—12, line 7.

21. Tr. 12, line 14—13, line 3; Tr. 49, lines 8–13.

22. Tr. 35, lines 3–6.

23. Petitioner's uncontradicted testimony was that he had been arrested once before on a charge of rape, but that after investigation, the charge had been changed to using obscene language before a minor. Petitioner pleaded guilty and was given a sentence of 10 days' imprisonment. He did not talk to an attorney concerning that offense; nor did anyone ever indicate to him that he could consult with an attorney. Tr. 51, line 4—52, line 19.

raigned in a group with about a dozen other defendants, and there is no record to indicate that any of the defendants were ever fully advised of their right to counsel. Petitioner's only out of court contact with the Public Defender involved requests that he be allowed to examine a copy of the grand jury minutes and a copy of the indictment. Respondent argues that petitioner's conduct in this respect shows that he never intended to avail himself of the services of the Public Defender but instead decided at an early stage of the proceedings to plead guilty. The Court believes, however, that petitioner never understood fully the fact that a representative of the Public Defender's Office had been appointed specifically to act as *his* attorney. The respondent points out that on July 29, petitioner told Mr. Sullivan that he did not want to plead guilty to possession of marihuana "today".[24] However, in court shortly thereafter, when the Public Defender was relieved of his representation of petitioner, petitioner indicated that he wanted time to secure the services of another attorney. In light of this request, the Court cannot conclude that petitioner had already made up his mind to plead guilty and was only stalling for more time out on bail. Finally, respondent relies heavily on petitioner's lack of initiative in communicating with the Public Defender's Office while he was free on bail. Without intending any criticism of that probably overworked office, the Court notes that the Public Defender's Office showed little initiative on its part in contacting petitioner.

██ In short, to accept respondent's argument that petitioner waived or abandoned his right to counsel by his conduct during the period in which he was free on bail, the court would be required to draw a whole series of inferences from the evidence, all unfavorable to the petitioner. The evidence simply does not warrant the drawing of the inferences suggested by respondent, particularly in light of the Supreme Court's admonition that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and * * * 'do not presume acquiescence in the loss of fundamental rights.' " Johnson v. Zerbst, supra, 304 U.S. at 464, 58 S.Ct. at 1023.

██ For the foregoing reasons, the court concludes that the petitioner was denied his constitutional right to counsel at a critical stage of the criminal proceedings brought against him in the Superior Court of Orange County in 1958. Therefore, the writ of habeas corpus must be issued to set aside the petitioner's plea of guilty and the resulting judgment of conviction entered on September 26, 1958, and to set aside the sentence imposed on petitioner on May 2, 1963, by the Superior Court of Orange County

IT IS HEREBY ORDERED, subject to the stay below specified, that Ynez S. Cuevas, being illegally restrained of his liberty, be discharged from the custody of the State of California and from the custody of Lawrence E. Wilson, Warden of San Quentin Penitentiary, Tamal, California, and from the custody of any other officers, employees, or agents of the State of California, which custody is pursuant to the sentence entered against him in the Superior Court of the State of California, in and for the County of Orange, on May 2, 1963:

Provided, that the duty to comply with this Order is stayed to and including October 7, 1966, to allow the Attorney General of the State of California, or any other proper officer of the State of California or of any of its political subdivisions, time in which to seek, if so minded, the re-sentencing of the petitioner on the judgment of conviction entered on May 2, 1963, the re-trial of petitioner on the indictment returned in June, 1958, or a further stay from the United States Court of Appeals.

24. Respondent's Exhibit C.

## APPENDIX A

SANTA ANA, CALIFORNIA—SEPTEMBER 2, 1958

THE COURT: People vs. Cuevas.

MR. ELIASON: Ready for the People.

THE COURT: Are you ready?

THE DEFENDANT: Yes.

MR. ELIASON: On this matter, your Honor, at one time the Public Defender represented him and he was to get an attorney and has not done so.

I think the Public Defender discussed with him somewhat his case.

He tells me now that he will plead to possession, which would mean changing the wording of the Indictment.

I could tell the Court more about it. It involved one cigarette he gave away.

THE COURT: Let's pass this one for a moment and come back to it then.

\* \* \* \* \* \*

THE COURT: People vs. Cuevas.

Now, in this matter there is an Indictment, one count charging the defendant wilfully, unlawfully and feloniously did sell, furnish and give away narcotic, to-wit: marijuana.

You advise me this was actually not a sale?

MR. ELIASON: According to our facts he gave a cigarette away.

THE COURT: You are satisfied to a plea on possession?

MR. ELIASON: Yes, your Honor.

THE COURT: We will change the wording to "wilfully, unlawfully and feloniously possess a narcotic, to-wit: marijuana".

Now, is this satisfactory with you, Mr. Cuevas, to make it a possession rather than a furnishing?

THE DEFENDANT: Yes.

THE COURT: I will strike the words "sell, furnish and give away", and merely insert the words "possess a narcotic".

THE DEFENDANT: May I get a probation hearing?

THE COURT: We will get to that.

Now, this Information as it reads at the present time says that the Grand Jury of Orange County, State of California, hereby accuses Ynez Cuevas of committing a felony, to-wit: Violation of Section 11500 of the Health and Safety Code of the State of California, in that on or about the 17th day of May, 1958, within three years prior to the filing of this Indictment, in the County of Orange, State of California, he did then and there wilfully, unlawfully and feloniously possess a narcotic, to-with [sic]: marijuana.

All of which is contrary to the form, force and effect of the Statute, and against the peace and dignity of the People of the State of California.

I gather from what you have been saying you wish to plead guilty to the charge of possession. Is that correct?

THE DEFENDANT: Yes.

THE COURT: You understand what the charge involves? That you are charged now and will plead guilty to the charge of having in your possession a marijuana cigarette?

THE DEFENDANT: Yes.

THE COURT: You understand that?

THE DEFENDANT: Yes.

THE COURT: Very well. The plea of not guilty then as to the original charge will be set aside and a plea of guilty as to the amended charge will be entered.

Do you wish to make an application for probation?

THE DEFENDANT: Yes.

THE COURT: Permission will granted [sic] to file an application for probation, and the matter is set down for hearing in Department 7 on Friday, September 26th, at 9:30 o'clock in the morning.

Before you leave, go over to the bailiff and get a form to fill out for an application for probation.

Go over to the Probation Department and file it. Give it to them over there. That will give them all of the information on the matter and then on September 26th, come back to the courtroom, the courthouse across the street, the old

church building, Department No. 7, and have your hearing on the application for probation at that time.

The present bail is deemed sufficient. You will remain on bail.