UNITED STATES of America,
Plaintiff-Appellee,

v.

Brett Allen BURSEY,
Defendant-Appellant.

No. 74–3607.

United States Court of Appeals,
Fifth Circuit.

July 18, 1975.

· Ca M. Cunningham, Austin, Tex., t-appointed, for defendant-appellar nd also for intervenors Dr. and Mrs. I n C. Bursey.

Edward McDonough, Jr., U. S. Atty., Ellis C. McCullough, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, CLARK and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal arises from a unique procedural matrix. In the Spring of 1973, Appellant Brett Allen Bursey was convicted by a jury in the Southern District of Texas of possession of peyote in violation of 21 U.S.C. § 841(a), and was sentenced to four years imprisonment. Brett Bursey was granted leave to proceed in forma pauperis on appeal, and counsel was appointed to represent him. Bond pending appeal was set at $10,000. At the time of the initiation of his appeal, Brett Bursey was in the South Carolina State Penitentiary on an unrelated conviction. In order that he might be released immediately upon the expiration of his South Carolina sentence, Brett Bursey arranged while still incarcerated there for the posting of a cash deposit on his Southern District of Texas bond. By letter of August 27, 1973, to the clerk of the federal district court in South Carolina, Brett Bursey advised that a 10% deposit on his bond was to be deposited into the registry of the court, that his own financial status had not changed "since the court accepted my petition to proceed in forma pauperis," and that upon performance of bond conditions, the 10% deposit should be returned to his parents, Dr. or Mrs. Don C. Bursey.

On August 31, 1973, Brett Bursey was released on an appearance bond in connection with his peyote possession case, executed by him before Charles W. Gambrell, a federal magistrate in the District of South Carolina.[1] The bond recited that a cashier's check for $1,000, representing the 10% deposit, had been lodged in the registry of the District Court for the District of South Carolina. On the same day, Magistrate Gambrell transmitted the bond, the check, and Brett Bursey's August 27 letter to the Deputy Clerk of the District Court for the Southern District of Texas in Corpus Christi. The Deputy Clerk in Corpus Christi transmitted the check to the Deputy Clerk in Houston on September 4, with directions that the deposit should revert to the Bursey parents upon disposition of the case.

Brett Bursey's peyote conviction was subsequently reversed on Fourth Amendment grounds. United States v. Bursey, 5 Cir. 1974, 491 F.2d 531. On remand the district court dismissed the indictment against Brett Bursey in an order entered May 14, 1974. Nothing further of consequence transpired until September 23, 1974. On that date, without notice to the parties or a prior hearing, the district court entered an order directing the clerk of the court to transmit $1,000, the amount of Brett Bursey's cash deposit on bond, to the Administrative Office of the United States Courts for deposit in the Treasury as reimbursement for the costs of his appointed counsel.[2] Au-

---

1. Pursuant to the Bail Reform Act of 1966, 18 U.S.C. § 3146.

2. In terms, the order provided:
 On first appearing before the United States District Court, the defendant Brett Allen Bursey made claim of indigency and requested appointed counsel and the court thereupon appointed Mr. Cameron Cunningham, a member of the bar of this Court, to represent the defendant throughout the proceed-
 ings; thereafter, the defendant did come into funds in the amount of $1,000.00 utilized by him under the Bail Reform Act of 1966 as a cash deposit on the bond in the amount of $10,000.00; and the proceedings in this Court have been concluded and the obligations of the bond have been satisfied; and the attorney has heretofore submitted a voucher for services rendered under the Criminal Justice Act of 1964 in the amount of $1,490.63 which has been approved for

thority for the order was laid to 18 U.S.C. § 3006A(f).[3] The order of the district court has been executed, and the parties agree that the $1,000 has by this time reached the Treasury.

Brett Bursey filed a notice of appeal from the district court's September 23 order on October 3, 1974. On December 13, 1974, Brett Bursey's parents, who were not parties to the proceedings before the district court in their son's criminal case, filed a motion in this court for leave to intervene, together with a supplemental memorandum of law. Their petition recites that the $1,000 cash deposit was their property and that they, rather than Brett Bursey, are thus the real parties in interest. This motion, never opposed by the Government, was granted by a judge of this court in an order entered December 26, 1974. The three appellants Bursey have briefed and argued this cause together on the theory that the district judge erred in ordering the cash deposit to be deposited in the Treasury because the funds belonged to the senior Burseys alone. Specifically, they maintain that the trial court's summary action was not authorized under 18 U.S.C. § 3006A, and that it offends their due process rights to a prior hearing and Brett Bursey's statutory right to bail

pending appeal. They pray f⊙_____er returning the cash deposit t⊙_____nd Mrs. Don C. Bursey. The Unit_____ates has argued in response that t_____trial judge's actions were proper and that, in any event, this court lacks jurisdiction at this time to grant the relief sought to these parties. On its jurisdictional points the Government argues that the elder Burseys' claims must fail, first because they were not parties below, and second because sovereignty immunizes the government from any action to withdraw the property already covered into the Treasury. We conclude that jurisdiction exists to determine the merits of the case between these parties; on the merits, we hold that the district court erred in distributing the cash deposit funds without an "adequate inquiry"; we thus remand with directions that the court vacate the order appealed from, allow appellants an opportunity to plead, and conduct such further proceedings as are necessary to comply with our holding here.

We turn first to the question of sovereign immunity.

## I.

The parties agree that the September 23 order of the district court has been

payment; therefore, pursuant to Sec. 3006A(f) Title 18 U.S.C.A., this Court finds that funds are available to the defendant for payment of such representation. IT IS ORDERED that of the $1,000.00 on deposit in the Registry of this Court, the Clerk is directed to issue a check in the amount of $1,000.00 payable to the Administrative Office of the United States Courts to be transmitted for deposit in the Treasury of the United States as reimbursement to the appropriation, current at this time, to carry out the provisions of Sec. 3006A(f) Title 18 U.S. C.A.

3. Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render

investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. . . .

*See also* S.D.Tex.R. 22(E), which provides in pertinent part:

[W]here a defendant has made claim of indigency to secure the services of appointed counsel, at the expense of the United States, and/or to secure investigative, expert or other services, and where the release of such defendant was secured by a bail deposit of money or obligations of the United States, the Court or United States Magistrate may authorize or direct that such bail bond deposit, or so much thereof as may be necessary, may be applied as provided in § 3006A(f) of Title 18 U.S.C.A. to the attorney or agency furnishing such services or, where same has been paid by the United States, as reimbursement to the United States therefor.

carried out and that the $1,000 deposit has become safely lodged in the Treasury of the United States. With the passage of this money into the Treasury, the Government argues that the sovereign immunity of the United States dispossesses the district court of any jurisdiction to order its reimbursement to the Burseys and that this appeal is now moot. Instead, the Government asserts, the Burseys must be relegated to the initiation of a separate action against the Government under the Tucker Act,[4] for the recovery of their lost deposit.[5]

We are not assured of the correctness of the Government's premise, for which it offers no authorities, that sovereign immunity protects it from an order to return money awarded it in a lawsuit if it appears on direct appeal that the award was erroneous. Certainly there can be no doubt that if the order of the district court had been stayed, and the deposit money had never reached the Treasury, then an order vacating the September 23 order and refunding the deposit to Brett Bursey or his assigns would be within our jurisdiction. But the Government asserts that the speed of execution of the district court's order cuts off our review and even the lower court's reconsideration. This reasoning seems contrary to the ordinary conceptions of appellate review. *See* 28 U.S.C. § 2106; *cf.* note 11 *infra.* We need not pursue this precise line of inquiry, however, because we think that in any event the Government's waiver of sovereign immunity in the Tucker Act is applicable

here. The Government admits that the Tucker Act comprehends claims of the substantive nature asserted here; the only question is whether the Tucker Act's waiver may be invoked only upon the initiation of a separate suit.

In United States v. Lewis, 5 Cir. 1973, 478 F.2d 835, aff'g E.D.La.1972, 342 F.Supp. 833, two individuals sought in a *coram nobis* proceeding to exonerate themselves from certain decade-old convictions under the income tax code which were no longer viable under Marchetti v. United States[6] and Grosso v. United States,[7] and to recover fines paid under their sentence of conviction. A *coram nobis* motion, as the Supreme Court held in United States v. Morgan, 1954, 346 U.S. 502, 505 n.4, 74 S.Ct. 247, 249, 98 L.Ed. 248, 253, "is a step in the criminal case[8] and not . . . the beginning of a separate civil proceeding." Thus, while the Government conceded in *Lewis* that the order setting aside the petitioners convictions was correct, it asserted, as here, that any recovery of the fines must be sought in a separate action brought under the Tucker Act. We rejected this contention, holding that

This statute [the Tucker Act] is one which confers a jurisdiction upon the district courts. It is not procedural. We can see no reason why a person who has paid a fine pursuant to an unconstitutional statute should be required to resort to a multiplicity of actions in order to obtain reimbursement of money to which he is entitled.

---

**4.** 28 U.S.C. § 1346(a)(2):

> The district courts shall have original jurisdiction, concurrent with the Court of Claims, of . . . [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the·United States, or for liquidated or unliquidated damages in cases not sounding in tort.

**5.** *Cf.* Blanchette v. Connecticut General Ins. Corps., 1974, 419 U.S. 102, 95 S.Ct. 335, 42

L.Ed.2d 320. An analogous procedure was followed in Neely v. United States, S.D.Fla.1973, 357 F.Supp. 713.

**6.** 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889.

**7.** 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906.

**8.** Indeed, *coram nobis* has been abolished on the civil side, F.R.Civ.P. 60(b) *cf.* the discussion of United States v. One 1961 Red Chevrolet Impala Sedan, 5 Cir. 1972, 457 F.2d 1353, *infra* note 13.

This invocation of Tucker Act's waiver of jurisdiction in a criminal *coram nobis* proceeding has consistently been followed in other courts. *See* De Cecco v. United States, 1 Cir. 1973, 485 F.2d 372; [9] Pasha v. United States, 7 Cir. 1973, 484 F.2d 630; United States v. Summa, D.Conn.1972, 362 F.Supp. 1177; *See also* United States v. Rothstein, 7 Cir. 1911, 187 F. 268.

In a parallel vein on the civil side, we have eschewed the "traditional rule" [10] and held that a Tucker Act claim for affirmative relief against the government may proceed upon a counterclaim, and need not be brought as a separate suit.[11] United States v. Springfield, 5 Cir. 1960, 276 F.2d 798, 803–04. In so concluding we reasoned that

> the statute should be interpreted from a practical rather than a technical standpoint. Nothing in the statute itself precludes such an interpretation. And in a situation where no substantive rights are at stake, the only question being whether litigation is going to be disposed of in an expeditious or inexpeditious manner, we think that an interpretation which lends itself to sound judicial administration is justified.[12]

■■ We adhere to the recognition of *Lewis* and *Springfield* that invocation of the Tucker Act's waiver is not conditioned upon the procedural context in which it is sought.[13] The matter at bar

---

**9.** The district court in *De Cecco* reportedly treated the *coram nobis* petition "after some initial uncertainty, as a civil action separate from the earlier criminal case." 485 F.2d at 373. The appellate opinion did not consider whether the action was civil or criminal in nature, although its reference to *Morgan, supra,* suggests that the court was aware of the proper denomination of the action. The Government did assert, however, that a Tucker Act recovery was not possible in a *coram nobis* proceeding. The First Circuit responded that "[t]he Tucker Act requires no particular form of pleading: modern procedure does not encourage undue concern with labels." 485 F.2d at 374.

**10.** Fostered in United States v. Nipissing Mines Co., 2 Cir. 1913, 206 F. 431, petition for cert. dismissed, 1914, 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582.

**11.** Where no statutory waiver of sovereign immunity is applicable to the substantive claim sued upon, a defendant in a suit brought against it by the government

> which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims . . ..

Frederick v. United States, 5 Cir. 1967, 386 F.2d 481. *See* United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888. *See*

*also* United States v. Kittredge, 5 Cir. 1971, 445 F.2d 1117, 1121.

**12.** *Id.* 804. This conclusion followed those of the First Circuit, United States v. Silverton, 1 Cir. 1952, 200 F.2d 824, 827, and the Fourth Circuit, Thompson v. United States, 4 Cir. 1957, 250 F.2d 43, 44. *See generally* authorities cited in P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, The Federal Courts and The Federal System 1347–48 (2d Ed. 1973); 3 Moore's Federal Practice, ¶ 13.29 at 13–744 to 13–752 (1974).

**13.** There is nothing to the contrary in United States v. One 1961 Red Chevrolet Impala Sedan, 5 Cir. 1972, 457 F.2d 1353. In that case the petitioner sought restitution for property forfeited to the Government a decade earlier pursuant to a libel of information charging him with conduct then in violation of criminal statutes, but later rendered unpunishable in *Marchetti* and *Grosso, supra.* He filed two F.R. Civ.P. 60(b) motions in the original district court proceeding seeking to set aside the forfeiture and recover the value of his property. Relief was denied on procedural grounds by the district court, and we affirmed. We held that appellant's remedy lay through the initiation of a separate proceeding (under the Tucker Act) for the reason that the only relief available under Rule 60(b) was the setting aside of the previous forfeiture—not the restitution of the lost value—and that the existence of Rule 60(b) itself could not by any means be regarded as a waiver of sovereign immunity to affirmative relief. We had no cause to, and we did not, consider in that case whether, if the relief sought could have been granted under Rule 60(b), the Tucker Act's waiver of sover-

is, of course, not a *coram nobis* proceeding or a counterclaim, but one connected even more closely to the original order pursuant to which the Bursey cash deposit was forfeited. The principle of conserving judicial resources operative in those cases all the more strongly supports our conclusion of the applicability of the Tucker Act's waiver here. In the absence of any other evident obstacles [14] (and the Government has raised none), we find no jurisdictional bar to allowing the Burseys to seek Tucker Act relief in the present proceeding on remand.

## II.

The Government filed no opposition to the senior Burseys' motion to intervene on appeal, and does not argue now that permission to intervene on appeal, as such, was improperly granted. It does maintain, however, that intervention on appeal cannot make up for the senior Burseys' absence below. We conclude against the Government on this point, and our reasoning delves us immediately into the substance of the case.

 Title 18 U.S.C. § 3146(a) [15] provides in pertinent part that when a criminal defendant is to be released on bond,

> [the district judge] shall . . . impose the first of the following conditions of release which will reasonably assure the appearance of the person
>
> . . .
>
> (1) . . .
>
> (2) . . .
>
> (3) require the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security as directed, of a sum not to exceed 10 percentum of the amount of the bond, such deposit

eign immunity would or would not have been available in that procedural context.

14. *Compare* United States v. One 1961 Red Chevrolet Impala Sedan, 5 Cir. 1972, 457 F.2d 1353, discussed in note 13 *supra*.

15. Applicable here by virtue of 18 U.S.C. § 3148.

> to be returned upon the performance of the conditions of release;
>
> (4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or
>
> (5) . . . ..

Brett Bursey was released under subsection (3) procedures, intended by Congress to be the less onerous of the two bonding alternatives. Nothing in § 3146 or any other provision of the Bail Reform Act of 1966 requires that cash deposited under § 3146(a)(3) be property of the party bonded, and we discern no basis in reality or in law for a presumption that it be his. *See* S.D.Tex.R. 22(E), *infra* note 16; Neely v. United States, S.D.Fla. 1973, 357 F.Supp. 713; *cf.* Heine v. United States, 6 Cir. 1943, 135 F.2d 914; United States v. Davis, 2 Cir. 1943, 135 F.2d 1013, aff'g on the opinion below S.D.N.Y.1942, 47 F.Supp.176; *but cf.* United States v. Werner, N.D.Okl.1931, 47 F.2d 351; United States v. Widen, N.D.Ill.1930, 38 F.2d 517; *cf. also* Rudd v. United States, 7 Cir. 1943, 138 F.2d 745. Upon the performance of the conditions of release, then, a third party supplying a § 3146(a)(3) deposit would ordinarily be entitled to the return of his deposit, in accordance with the explicit language of that provision.[16]

 The Government contends, however, that such a right to return of a deposit is qualified by § 3006A(f), which it reads to subject such a deposit to a Governmental claim for compensation for providing an attorney. To weigh this argument, we look to the legislative context of § 3006A(f). Title 18 U.S.C. § 3006A(b), dealing with the adequate representation of criminal defendants provides that:

16. Indeed, S.D.Tex.R. 22(E), provides in part that "the defendant, *or the one by whom the deposit was made on his behalf,* shall be entitled to a refund thereof when . . . the defendant has been discharged from all his obligations thereon" (emphasis added).

Unless the defendant waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him.

Section 3006A(c) provides additionally that:

If at any time after the appointment of counsel the United States magistrate or the court finds that the person [for whom counsel was appointed] is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.

Section 3006A(f) provides in turn:

Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid . . . to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

We think it manifest that these three subsections, all of which deal with the conditions under which an apparently indigent defendant must provide all or part of his own counsel's fees, are to be read in *pari materia* insofar as they describe the manner of inquiry required of the Magistrate or court and the standards to be applied in determining the defendant's financial ability to provide for his own representation. Thus we think it clear that the reference to "funds available for payment" in subsection (f) refers solely to circumstances in which funds would have been available for payment *for representation.* More-

over, a finding that such funds are available "from or on behalf of a person furnished representation" under subsection (f) must be predicated upon an "appropriate inquiry," as in subsection (b).

We also conclude that the mere deposit of cash under 18 U.S.C. § 3146(a)(3) to secure the release of a criminal defendant does not conclusively establish that the deposited funds were available for Government reimbursement under subsection (f). To begin with, as we have already noted, the Bail Reform Act's provisions do not establish that a § 3146(a)(3) cash deposit was the property of the defendant.[17] Subsection (f) also envisions the capture of funds "available for payment . . . *on behalf of* a person furnished representation" (emphasis added), but there is no reason to presume that any third party willing to provide funds for a bond deposit for a criminal defendant—money which would ordinarily be refunded— would necessarily also supply funds to be expended for the payment of counsel. That is, in the terms of the statute, there is no reason to presume that a bail deposit which was property of a third party sponsor was alternatively available to the defendant for payment for representation. Yet a holding that a bond deposit is automatically forfeit under subsection (f) would mean in practical terms that an indigent defendant eligible for release under § 3146(a)(3) who could (on promise of its refund) scrape together a bond deposit from his own resources or those of others, but who could not *expend* his money or that of his benefactors on counsel fees, would be effectively denied bond on account of his indigence. Such a conclusion runs counter to the recognition that "access" of some kind or for some purpose to funds does not necessarily establish ineligibility for appointed counsel, see, e. g., United States v. Kelly, 7 Cir. 1972, 467 F.2d 262, 266,

---

**17.** We do not imply that if the deposit money were the property of the defendant, it would be available for payment under § 3006A(f) as a matter of law. To the contrary, *see, e. g.,*

United States v. Cohen, 8 Cir. 1969, 419 F.2d 1124. The question is not presented in this case at this time.

cert. denied 1973, 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393; United States v. Cohen, 8 Cir. 1969, 419 F.2d 1124, 1127; *see also* Cuevas v. Wilson, N.D.Cal.1966, 264 F.Supp. 65, 72, and flatly contradicts Congress' explicit purpose in enacting § 3146(a)(3) to facilitate the release of indigent defendants on bond when detention is not required to serve the ends of justice. *See* Bail Reform Act of 1966, Pub.L.No. 89–465, § 2, 80 Stat. 214.

The existence of the Brett Bursey cash bond deposit, then, did not necessarily establish that the Government was entitled to its recovery under § 3006A(f). On the contrary, the district court would have been obliged to return the deposit to the elder Burseys under § 3146(a)(3), had it been demonstrated that it was their property and that it was unavailable for payment for Brett Bursey's representation. Moreover, we think the elder Burseys would have been entitled upon a timely motion to intervene below to protect their asserted interest in the cash deposit. No rule specifically provides for the intervention in a criminal case by a party in the position allegedly occupied by the Bursey parents here. Had the Bursey parents been obliged to commit themselves as sureties for their son on the full amount of the bond under § 3146(a)(4) in order to secure his release, however, they would have become parties below by operation of F.R.Crim.P. 46(e)(3),[18] and clearly there would have been no procedural bar to their participation in proceedings regarding the disposition of their under-

taking.[19] Under § 3146(a)(3) they were not required to obligate themselves for more than their deposit, or to become parties to the bond itself. That fact does not necessarily lessen the substantiality of their interest or the necessity of their intervention in order to protect themselves from error in the handling of their deposit from any source, however. Moreover, to hold that a subsection (3) depositor could never participate in proceedings to dispose of his undertaking would run counter to Congress' design in enacting subsection (3) as an administratively simpler and economically surer means than subsection (4) for a trustworthy defendant to procure his release on bond. As we find nothing to the contrary in F.R.Crim.P. 46(e)(3)[20] or any other provision, these considerations compel our conclusion that a timely limited intervention by an asserted subsection (3) depositor such as the Burseys here may be proper. *See* F.R.Crim.P. 57(b).[21] *But cf.* Bankers Mortgage Co. v. McComb, 10 Cir. 1932, 60 F.2d 218.

The Bursey parents never intervened before the trial court's summary disbursement of the Brett Bursey bond deposit, however; having notice of nothing to the contrary, they apparently rested upon the representations of their son's August 27, 1973, letter, and the September 4, 1973, directive of the Deputy Clerk in Corpus Christi, that the bond deposit should be returned to them. We think this inaction did not forfeit the senior Burseys' asserted interests in this

---

**18.** F.R.Crim.P. (46)(e)(3) provides in part that "[b]y entering into a bond the obligors submit to the jurisdiction of the district court . .."

**19.** *See, e. g.,* Sifuentes-Romero v. United States, 5 Cir. 1967, 374 F.2d 620; Carolina Casualty Ins. Co. v. United States, 5 Cir. 1960, 283 F.2d 248; Dudley v. United States, 5 Cir. 1957, 242 F.2d 656.

**20.** The purpose of F.R.Crim.P. 46(e)(3) is manifestly to extend the district court's reach to the assets of any obligor on a bond which have not already been deposited; it does not aim to exclude jurisdiction over a third party

who has provided a § 3146(a)(3) deposit and wishes to protect it.

**21.** If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.

*See also* F.R.Crim.P. 2:

These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

case, because the district court's summary action was not to be anticipated.

In this case the district court based its finding of the availability of the $1000 deposit for payment under subsection (f) solely upon the fact that those funds had been deposited on the appearance bond, and the court, in accordance with its practice under Local Rule 22(E), summarily disbursed the funds without notice to the parties. In so proceeding we think the district court failed to make an "appropriate inquiry" as to the availability of the funds for payment as required under subsection (f). The inconsistency of Local Rule 22(E) must yield. The record before the trial court reflected Brett Bursey's representation, in his August 27 letter, that the posting of the cash deposit did not affect his own financial status and his direction that the cash deposit was to be returned to his parents. These circumstances were sufficient to raise a question as to the "availability for payment" of the bond deposit: given these facts, and given the court's own prior recognition of Brett Bursey's entitlement to appointed counsel as an initial matter, the district court was under a duty to inquire further before concluding that the cash deposit money was available for payment in compensation for counsel, *see* Wood v. United States, 5 Cir. 1967, 387 F.2d 353; United States v. Cohen, 8 Cir. 1969, 419 F.2d 1124; *cf.* Cuevas v. Wilson, N.D.Cal.1966, 264 F.Supp. 65, 72.

At the very least, such an inquiry should have involved notice to Brett Bursey of the anticipated disbursement and an opportunity for him and his sponsors (upon a prompt motion to intervene, *cf.* McDonald v. E. J. Lavino Co., 5 Cir. 1970, 430 F.2d 1065) to present their objections thereto.[22] In the absence of the initiation of any such inquiry by the district court, without which the court could not properly have appropriated the deposit under § 3006A(f), the Burseys were entitled to stand on their expectations that the September 4, 1973, directions of the Deputy Clerk of the district court in Corpus Christi—to refund the deposit to the elder Burseys—would be carried through. Nothing in this record indicated that the cash deposit on Brett Bursey's bond was his property; indeed, all signs pointed toward other ownership, and the court had no basis for belief that it was appropriate for forfeiture under § 3006A(f). The trial court had no basis for proceeding to dispose of the bond deposit in any way other than to return it under § 3146(a)(3). In these circumstances it is evident that the elder Burseys cannot be dispossessed of their interest by failing to anticipate the trial court's error in summarily appropriating the cash deposit, and by failing to intervene before that error transpired. Thus we[23] conclude that the elder Burseys were properly permitted to intervene upon appeal[24] and that upon remand they must be allowed to raise their claim

---

**22.** We need not consider whether the senior Burseys were entitled themselves to personal notice of the anticipated order.

**23.** *See* F.R.A.P. 27(c).

**24.** No specific provision in the Federal Rules of Appellate Procedure or the Rules of this Circuit provides for intervention on appeal, except in proceedings to review agency action. F.R.A.P. 15(d). F.R.Civ.P. 24, relied upon by the Burseys, is also inapplicable, *see* F.R.Civ.P. 1; Automobile Workers, Local 283 v. Scofield, 1965, 382 U.S. 205, 217 n.10, 86 S.Ct. 373, 381, 15 L.Ed.2d 272, 280. However, the Supreme Court has recognized that "the policies underlying intervention [in the district courts] may be applicable in appellate courts." *Id.*

The Seventh Circuit has permitted appellate intervention, Hurd v. Illinois Bell Telephone Co., 7 Cir. 1956, 234 F.2d 942 ("spurious class action" suit), and we have previously said that "[a] court of appeals may, but only in an exceptional case for imperative reasons, permit intervention where none was sought in the district court . . .." McKenna v. Pan American Petroleum Corp., 5 Cir. 1962, 303 F.2d 778. *See also* Blakeney v. Fairfax County School Bd., 4 Cir. 1964, 334 F.2d 239. In the exceptional circumstances of this case, where the senior Burseys assert a significant stake in the matter on appeal, where it is evident that their interest cannot adequately be represented by Brett Bursey, (who has now disclaimed any personal interest in the deposit), and where their lack of timely intervention below may be justified by the district court's action without notice, we think that intervention was proper under *McKenna.*

of entitlement of erroneous forfeiture at this stage in these proceedings.

This discussion has already developed our conclusions regarding the merits of the Burseys' points on appeal: we conclude that the court below erred in summarily committing the Brett Bursey bond deposit to the United States. The trial court concluded that the deposited sums were funds available to the defendant for the payment of counsel fees. On this record, however, all that the court could properly have concluded was that the $1,000 was available for deposit for the release of Brett Bursey from custody pending appeal. Funds available for payment for representation are repayable to the Government under the Criminal Justice Act; but nothing in that Act or the Bail Reform Act mandates that a person who has made funds available for deposit on an accused's bond also has necessarily dedicated the funds to or for counsel fees. The construction contended for by the Government here—appropriating bond deposits as "available" for reimbursement for costs of representation—would discourage potential benefactors from ever making bond deposits for trustworthy defendants. If Congress intended so to transmute bond money into counsel fee money, it could have done so without linguistic ambiguity or abracadabra. But the imputation of Congressional avarice sought by the Government is not the letter or purpose or rational extension of the legislation as enacted; on the contrary, it chills the statute's overriding concept and spirit to sub-zero levels.

So persuaded, we conclude that the disbursement order entered below must be vacated. The Burseys urge us to proceed further, and to direct that the forfeited funds be returned to Dr. and Mrs. Bursey, but we are unprepared so to hold on this record. The facts asserted by the Burseys to establish conclusively their ownership of the deposit money and its unavailability on behalf of Brett Bursey for payment for representation have not been tested at the district court level, as they must be. We are unwilling, in this virgin legal territory, to engage in any hypothetical analysis of alternative fact situations as they may appear and be weighed by the trial judge. Thus, we hold only that the district court erred in summarily appropriating the cash deposit to the Treasury in the circumstances of this case; and we remand the cause for further proceedings.

The cause is remanded with directions that the judgment appealed from be vacated and for further proceedings not inconsistent with this opinion.