**UNITED STATES of America, Appellee,**

v.

**Clark BRACEWELL,**
**Defendant-Appellant.**

**No. 425, Docket 77–1379.**

United States Court of Appeals,
Second Circuit.

Submitted Nov. 29, 1977.

Decided Jan. 27, 1978.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York City, Nathaniel H. Akerman, Richard Weinberg, Asst. U. S. Attys., New York City, of counsel, on the brief, for appellee.

Mark E. Arroll, New York City, on the brief, for defendant-appellant.

Before WATERMAN, MOORE and GURFEIN, Circuit Judges.

MOORE, Circuit Judge:

Defendant, Clark Bracewell, whose criminal conviction on narcotics charges was earlier affirmed by this court in an unpublished opinion (No. 77–1074, May 4, 1977), appeals from an order granting the motion of the United States to have the money seized from him at the time of his arrest deposited in the United States Treasury pursuant to 18 U.S.C. § 3006A(f) for reimbursement of the court-appointed defense attorney who represented Bracewell on his trial and appeal. We reverse and remand for further findings.

Defendant Bracewell is an English national who was convicted on three counts of narcotics violations. At the time of his arrest, $1,950 was found on his person: a $1,000 Western Union money order payable to the order of John Clark,[1] an admitted alias of the defendant, and $950 in cash. After trial, on the date set for sentencing (February 4, 1977), Bracewell moved for the return of the money. The Government responded orally to the motion:

"The Government will return the money once it has been determined that there will be no further appeal, and further, that the English authorities are not interested in prosecuting Mr. Bracewell, since this money would clearly be evidence if there was a new trial or if the English authorities were interested in prosecuting Bracewell, or indeed, if the Internal Revenue Service of Great Britain were interested in attaching that money since I believe Mr. Bracewell did not pay taxes on the sale of that hash oil in England."

Transcript of proceedings in *United States v. Bracewell*, 76 Cr. 863, at 364. Since the Government's position was that there should be no return of the money until a decision on the appeal from defendant's conviction was reached, Judge Tenney, the trial judge, did not rule on the motion for return of the money, but found that the Government was entitled to keep the money in its possession until the appeal was exhausted. Transcript at 396, No. 76 Cr. 863. Six days later, on February 10, 1977, the Government supplemented its sentencing statement by sending Judge Tenney a letter requesting that the money be ordered payable to the United States Treasury pursuant to 18 U.S.C. § 3006A(f), which provides:

"Whenever the . . . court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney . . . or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section."

Judge Tenney did not act on the Government's letter.

On the appeal of his conviction, Bracewell asked this court to direct the return to him of his money. In its brief, the Government opposed the request, stating that it intended to make a formal motion under 18 U.S.C. § 3006A(f) at the conclusion of the appeal. On May 4, 1977, the appeal was submitted to a panel of this court, and the conviction was affirmed by oral opinion. Judge Gurfein, the presiding judge on that panel, stated for the court:

"Appellant also argued that a Western Union money order and cash seized from him at the time of his arrest should not have been admitted. There was no objection made . . . .. In any event, the money was admissible . . . because it was relevant to support the testimony of Mr. Mogul [co-conspirator Helen Brown's attorney] that appellant had tried to get Miss Brown released on bail, indicating a connection between them.

\* \* \* \* \* \*

The statement in summation by the United States Attorney that the money order and cash found on Bracewell were the product of drug sales was, we agree, not sufficiently supported by evidence, but we believe that . . . it was harmless error. . . .

\* \* \* We also agree with the government that it's entitled to hold the $1,950 involved, to be applied to the reimbursement of Bracewell's assigned counsel." *United States v. Bracewell*, No. 77–1074, unpublished opinion (2d Cir., May 4, 1977), Record on Appeal, Document No. 15, Exhibit "A".

---

1. The money order was apparently paid to Bracewell by the attorney for Helen Brown, an unindicted co-conspirator of Bracewell. The $1,000 represented a return to the defendant of bail money he had wired to Brown's attorney on behalf of Brown. Affirmation of Mark E. Arroll, attorney for defendant Bracewell, at page 3, accompanying Motion for new trial, etc., Record, Document No. 10. The money order and cash found on Bracewell at the time of his arrest were offered into evidence, apparently for the purpose of showing that Bracewell "must have gotten this money from the illicit sale of drugs". *Id.*

The Government did make its formal motion on June 23, 1977; it was granted by Judge Tenney on August 11, 1977. Bracewell's court-appointed attorney received payment for his services on trial and on appeal. It is from the order granting the motion that Bracewell appeals.

■ We agree with appellant that the issue of the propriety of the seizure for reimbursement purposes, although addressed in passing on the prior appeal, was never properly reviewed by this court. The statement made in the oral opinion was in direct response to appellant's argument that he was entitled to the money now. The emphasis was on the right of the Government to hold the money. There was no intention to hold that its right to claim the application of the money in reimbursement of Bracewell's assigned counsel could not be contested, for no order had yet been entered. Indeed, in the Government's brief in the prior appeal, it stated that it intended to make a formal motion under 18 U.S.C. § 3006A(f), and that "[i]f Judge Tenney should grant the Government's motion, the defendant could then properly raise an appeal with this Court". Brief for Appellee, United States of America, at 34, *United States v. Clark Bracewell* (No. 77–1074). Since the Government previously argued only that Bracewell was not "presently" entitled to a return of the money, and that the Government was entitled to it pending decision of the formal motion only, we are not now foreclosed from considering the propriety of forever depriving Bracewell of his funds under the reimbursement provision. *See Jhirad v. Ferrandina*, 536 F.2d 478, 483 (2d Cir. 1976). We therefore proceed to consider the arguments in this case.

■ To begin, we reject the notion that the Government seizure of Bracewell's funds constituted an illegal "forfeiture", as appellant would have us hold. Clearly, the reimbursement statute, which was duly enacted to carry out salutary policies and which provides for notice of the intended order of recoupment, creates a constitutionally proper ground for depriving a financially able defendant of available funds which, in fairness, should be remitted to the public coffers. *See Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), in which the Supreme Court upheld an Oregon recoupment provision in the face of a constitutional challenge. Nor do we think that the Government's "promise" to return the funds precludes its otherwise lawful claim thereto. Appellant was aware, during this period, that adverse claims to the funds would be considered; we do not think that bad faith prompted the Government to press its claim at the time it did. Indeed, the reimbursement provision permits an order directing recoupment "whenever" funds are found to be available for payment.[2]

■ We are concerned, however, that the statute may have been misconstrued in this case. The question, in our view, is whether the funds appropriated by the Government were, in fact, "available for payment" within the meaning of the statute. This, of course, is a statutory condition which must be met before an order of reimbursement is properly granted. The Government would have us hold, in essence, that, whenever a defendant in possession of funds is given notice of a proposed order of reimbursement and is permitted the opportunity to oppose the motion, the statute, unrestricted by its own terms, is satisfied, and that no further inquiry is required. We do not agree. We think that in a case such as this, the district court is obliged to conduct an inquiry into the defendant's personal and familial financial status, and to make a finding on the record that the funds being appropriated to repay counsel costs are "available" for that purpose. It may well be that such is the case here, but, because of the fact that the record is barren of any

---

2. Clearly, in this case, the funds found on appellant were not "available" when seized because of their potential evidentiary use. The funds were, in fact, introduced into evidence. The prior panel, while finding no evidentiary support for the proposition that the seized money was the product of an illicit drug sale, nonetheless held the evidence admissible to prove a "connection" between Bracewell and his co-conspirator, Helen Brown.

such finding, we are not prepared to so hold.[3]

We have been cited to, and have found, little in the way of authority construing the federal reimbursement statute we are here asked to consider. While the legislative history of the Criminal Justice Act of 1964, P.L. 88–455, 88th Cong., 2d Sess., of which the subject provision is but a small part, is replete with comment about the underlying purpose of the Act (*i. e.,* to assure the effective assistance of counsel) and about the contemplated operation of many of its provisions, the recoupment provision is not discussed. We thus construe subsection (f), quoted above, guided not by legislative history but by authority relating to analogous provisions of law.

Two recent Supreme Court cases have involved a review of State reimbursement provisions which are, in some ways, similar to the federal provision. In *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), the Court struck down a Kansas law under which an indigent defendant, provided with counsel by the State, automatically became obligated to the State for the expenditures made on his behalf. Noting the wide variety of State reimbursement statutes extant in the United States and the disparate means by which they provide for recoupment, the Court refused to make "any broadside pronouncement on their [the various statutes'] general validity". *Id.* at 133, 92 S.Ct. at 2030. Nonetheless, the Kansas statute was found to be infirm under the Equal Protection Clause because, under its terms, the indigent debtor, subjected to an automatic judgment of liability, was not given the same exemptions available to any other judgment debtor under Kansas law. The recoupment judgment could be satisfied even by unrestricted garnishment of the debtor's wages. The Court, alluding to the grave risk imposed by the State on only this one class of debtor—*i. e.,* the risk that the indigent would be denied "the means . . . to keep himself and his family afloat", *id.* at 136, 92 S.Ct. at 2032—thus held the statute unconstitutional.

Similar concern was expressed for the indigent defendant's plight in the case of *Fuller v. Oregon, supra,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), in which the Court upheld an Oregon recoupment statute. Under the Oregon provision, a sentencing court may order a convicted person to repay costs, including counsel fees, as a condition of probation only if he "is or will be able to pay them". Ore.Rev.Stat. § 161.665(3), quoted at 417 U.S. at 43, 45, 94 S.Ct. 2116, 2120. The court that imposes such a condition must "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." *Id.* Finally, though an order of recoupment is entered, a court may modify the order, or remit all or part of the costs imposed, if payment "will impose manifest hardship on the defendant or his immediate family". Ore.Rev.Stat. § 161.-665(4), quoted at 417 U.S. at 43–44, 45–46, 94 S.Ct. 2116, 2121. Because of the conditional nature of the obligation, tempered by concerns of "manifest hardship", the Court upheld the law under the Equal Protection Clause.

■ The federal statute we now construe is not so detailed as the Oregon statute reviewed by the Court in *Fuller*. It does not, by its terms, explain how it is to be applied. The sole criterion is "availability". Obviously, it leaves much to the sound discretion of the court asked to grant an order of reimbursement. Despite the absence of legislative guidelines, however, we cannot believe that Congress intended to confer upon the Government *carte blanche* authority to appropriate to itself any and all funds within its grasp. Were we to sanction the

---

**3.** We realize, of course, that the ruling on the motion in this case was foreshadowed by the prior proceedings in this case, as well as by the dearth of authority relating to the appropriate measures that should be employed when the Government invokes the reimbursement provision. We cannot fault the district judge for granting the motion in its entirety under the circumstances. We must, however, require a finding of "availability" consistent with the principles we adopt today.

granting of a motion for reimbursement solely upon demand by the Government, without requiring an appropriate inquiry into the defendant's financial position, we would be condoning the functional equivalent of Kansas's unconditional obligation imposed upon a criminal defendant, which was found constitutionally infirm in *James v. Strange, supra.*

Circumstances may exist, of course, where it is entirely appropriate, and consistent with both the purposes of the statute and fundamental notions of fairness, to order that a defendant's funds be payable to the Treasury for repayment of counsel fees. *See United States v. Wetzel,* 488 F.2d 153, 157 (8th Cir. 1973) ("Considering the facts that defendants received over $19,000 for the cattle and that they own real estate, we think that their financial status allows them to pay . . . the costs incurred on this appeal, including attorney's fees paid under the Criminal Justice Act."). However, each factual situation must "be weighed by the trial judge". *United States v. Bursey,* 515 F.2d 1228, 1239 (5th Cir. 1975).[4]

Before a finding of "availability" can properly be made, the district judge should be satisfied that, in ordering reimbursement in any specified amount, the defendant will not suffer extreme hardship as a consequence of being deprived of his funds. In every case, the needs of the defendant himself must be considered: if he is sentenced to imprisonment, he may, nonetheless, require some funds to fulfill basic personal needs. The amount, of course, may vary, depending upon whether the prison term is for two months or twenty years. Additionally, the court should be sensitive to the defendant's responsibilities to his family, if any. As a unanimous Supreme Court stated in discussing the availability of *forma pauperis* treatment under 28 U.S.C. § 1915:

> "We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. . . . To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges." *Adkins v. E. I. DuPont De Nemours & Co.,* 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948).

*See also, Wood v. United States,* 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967) (per curiam) (remanding for further consideration as to refusal to appoint counsel for an indigent defendant due to lack of adequate inquiry). In a similar vein, we think that a construction of the reimbursement provision that ignores the realities of a defendant's duties with respect to his family is undesirable. It is as much in the public interest to protect against the possibility that a defendant's dependents will become societal charges as it is to require a finan-

---

4. The *Bursey* case represents one of the abuses that can flow from an improper inquiry under the statute. There, pending appeal of Bursey's conviction, the court set bond at $10,000. A cashier's check for ten percent of the amount of the bond was deposited with the court, and a letter was submitted by the defendant to the effect that the deposit should be returned to his parents upon disposition of the case. Bursey's conviction was reversed on appeal and the indictment was dismissed. Four months after the order of dismissal was entered, the district court entered an order directing the clerk of the court to transmit the cash deposit to the Administrative Office of the United States Courts for deposit in the Treasury for reimbursement purposes. No notice was given to Bursey nor, of course, to Bursey's parents, who were not parties to the criminal action. They were permitted to intervene on appeal in order to raise their claim that the money appropriated had not, in fact, belonged to Bursey and thus was not "available for payment". In reviewing the circumstances of the case, the Fifth Circuit found the procedures followed by the district judge lacking. Not only was notice defective, but "appropriate inquiry" as to the availability of funds—a procedure specified in another section of the statute, 18 U.S.C. § 3006A(b), which must be undertaken before counsel is appointed in the first place—was lacking.

Although the *Bursey* court remanded to permit Bursey's parents to prove their ownership of the funds, it did so with the reservation that each case was to be judged on its own merits. We agree.

cially able defendant, who has been provided with legal services at society's expense, to repay the costs of his defense. *See United States v. Cohen*, 419 F.2d 1124, 1127 (8th Cir. 1969).

As a final consideration, the district judge must, of course, rule on any claim to funds in a defendant's possession made by persons other than the defendant. If monies paid on a defendant's behalf actually belong to a third party, then they are not "available for payment". *See United States v. Bursey, supra*, 515 F.2d 1228 (5th Cir. 1975), discussed at n.4 *supra*.

In the case at bar, Bracewell submitted, with his papers in opposition to the Government's motion, a letter from his mother stating that appellant had borrowed money from her husband, appellant's step-father, and that she, too, had lent funds to Bracewell. Record on Appeal, Document No. 17. Furthermore, when Bracewell first moved for an order releasing the funds, his attorney submitted an affirmation stating that the court was undoubtedly aware that Bracewell's wife had been imprisoned in a Spanish jail, but that she was recently released and was totally destitute, being supported by her parents. "It is [Bracewell's] intention", stated his attorney, "to use the bulk of [his] money to give to his destitute wife". Affirmation of Mark E. Arroll, attorney for defendant Bracewell, in support of motion for new trial and various other relief, Record on Appeal, Document No. 10, at page 8. We state these facts not to indicate any view on how the matter should be treated on remand, but rather to point out that these factors may, and should, be considered. It could well be that Bracewell's parents are not dependent on Bracewell for support, that his wife, being outside of the country, will not become a ward of any of the United States, and that Bracewell himself is not in need of any funds. The fact, however, that no findings were made, at least on the record, requires a remand for equitable consideration of appellant's financial status.

The decision to be made in this case, as in any future case that may arise

under 18 U.S.C. § 3006A(f), calls for an exercise of sound discretion, informed by the principles stated here. In the usual case, the district judge need not permit a full-fledged adversarial inquiry into the nature and amount of a defendant's assets; nor need he become involved in determining priorities to those assets. We hold only that any defenses to payment asserted by a defendant such as Bracewell should be fully considered. *See United States v. Durka*, 490 F.2d 478 (7th Cir. 1973). In the absence of a serious abuse of discretion, a district judge's findings as to "availability" of funds, if supported by an "adequate inquiry", will not be disturbed on appeal.

Reversed and remanded for a finding on "availability for payment".