**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anthony W. EMBRY, Defendant–**
**Appellant.**

No. 97–1402.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1997.

Decided Oct. 22, 1997.

Estaban F. Sanchez (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

David B. Mote (argued), Office of the Federal Public Defender, Springfield, IL, Defendant–Appellant.

Before FLAUM, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Ordinarily, it's not a good idea to carry a wad of cash in your pocket. It's especially ill-advised to do so when you're on federal supervised release, have missed several drug tests after flunking one, and have a warrant out for your arrest. Anthony Embry had $1,010 in his pocket on December 4, 1996, when he was arrested on a warrant charging that he violated the conditions of his supervised release—which had kicked in a few months earlier after he served most of a 30–month federal prison sentence imposed in the summer of 1993. The government glommed onto the loot, and when the supervised release violation proceeding ended, the district court sent the money to the Treasury as reimbursement for Embry's legal defense costs pursuant to 18 U.S.C. § 3006A(f). Crying foul, Embry appeals.

When a court finds "that funds are available" to a person who accepted a court-appointed attorney in a criminal case, it may "direct that such funds be paid [listing entities] to the court for deposit in the Treasury as a reimbursement" for the fees paid to the counsel. 18 U.S.C. § 3006A(f). Embry says his grand plus ten was "not available" because $650 was "earmarked" (Embry's words) for rent on an apartment he shared with his girl friend and $330 was owed to a trio of roofers (Alonzo and Frank Spencer and a fellow named Benjamin, whose last name Embry doesn't know) for work done at the behest of the JW Construction company of Springfield, Illinois. The district judge sent the money to the Treasury without conducting an evidentiary hearing into whether it was "available" under 18 U.S.C. § 3006A(f), and this alleged shortcoming forms the basis of Embry's appeal.

■ Right off the bat, Mr. Embry has a problem. While it's true he made it perfectly clear that he wanted his money back, we can't find, in the record, a pointed request for an evidentiary hearing. So we think an evidentiary hearing was waived. More importantly, however, we don't think an evidentiary hearing, under the circumstances, was required.

In *United States v. Durka*, 490 F.2d 478 (7th Cir.1973), we held that reimbursement of attorneys fees under 18 U.S.C. § 3006A is "a matter within the ... discretion of the district court and is not such an event that requires the procedural safeguards of an adversary hearing." And although *Durka* was decided five years before Elvis died, it's still alive and well. We see no reason for changing its general rule, although we recognize that certain unusual circumstances, not present in this case, could make a hearing necessary in another case in order to comport with due process.

But Embry's case presents no concerns that would make a hearing necessary. First, the sum involved is rather small. Second, the real amount in controversy is smaller still, for the money "earmarked" for rent does not enjoy a higher priority than would money destined to replenish the public purse. As for the rest, Embry stated on his financial affidavit, filed on the day of his arrest, that he earned $1,800 a month working for the construction company, that he was single with no dependents, that his monthly rent was $325, and that the $1,010 he possessed when arrested was his own money. He never said he owed money for back rent or that he owed money to his fellow workers. The roofers themselves never filed claims for part of the money, and none submitted as much as an affidavit saying they had dibs on part of the cash. The affidavit of Caroline Spencer, Embry's fiancee, which says, on this point, that "[o]n the morning of December 5, 1996, Anthony Embry was paid $1,110.00 in cash by building contractor John White of Springfield, Illinois, for roofing work previously done by Anthony Embry and others," is fa-

cially insufficient to establish that any of the roofers have a stake in the pot.

Embry hangs his hat on *United States v. Bracewell*, 569 F.2d 1194 (2nd Cir.1978), for his point that an evidentiary hearing on the availability of the funds was required, but the case, on close analysis, doesn't give him enough support. The defendant in *Bracewell* was convicted on drug charges, and at the time of his arrest he was carrying $1,950 in cash, which the arresting officers seized. After his sentencing the district court granted the government's motion to have the money turned over for reimbursement of attorneys fees pursuant to 18 U.S.C. § 3006A(f). The court entered the order without making an inquiry into the defendant's personal and familial status and without making findings on the record. *Id.* at 1196.

The Second Circuit ruled that to satisfy the statutory criterion of "availability" the court should conduct an inquiry into the defendant's familial responsibilities and should consider whether the defendant would suffer extreme hardship as a consequence of being deprived of the funds. *Id.* at 1199. The court should also rule on any claims to the money filed by third parties. *Id.* at 1200.

The *Bracewell* court, citing our decision in *Durka*, defined the nature of the "availability" inquiry by saying:

> In the usual case, the district judge need not permit a full-fledged adversarial inquiry into the nature and amount of a defendant's assets; nor need he become involved in determining priorities to those assets. We hold only that any defenses to payment asserted by a defendant such as *Bracewell* should be fully considered.

*Bracewell* at 1200.

In *Bracewell* the defendant submitted a letter from his mother stating that he had borrowed money from her and her husband. *Id.* at 1200. Additionally, the defendant filed a statement asserting that he intended to send the money to his wife, who was recently released from jail in Spain and was destitute. *Id.* at 1200. Factors of this sort should be considered by the district court as part of its inquiry into the "availability" of the hunted funds. *Id.* at 1200. But, significantly, the court did not order that the inquiry take the form of an evidentiary hearing.

 In our case, the district judge did consider Embry's claims and made the appropriate written findings in his order. From the record before him, the judge found there were no third-parties making claims to the money, that Embry did not have a wife or children, that Embry was not under an obligation to pay for his girl friend's share of the rent, and that Embry himself would not be needing an apartment while serving the sentence (12 months) which was ordered after the supervised release was revoked. So the district judge here made the appropriate "inquiry" and he topped it off with written findings. Our review leads us to conclude that the judge did not abuse his discretion in ordering that the $1,010 was available for reimbursement to the government for the cost of Embry's legal defense. The judgment of the district court is

AFFIRMED.