[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13932

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CARLOS MARTINEZ,
a.k.a. Carlos

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00077-LMM-RGV-4

_____

Before JILL PRYOR, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Carlos Martinez pleaded guilty to conspiracy to possess with intent to distribute at least 500 grams of methamphetamine and was sentenced to 240 months' imprisonment. While his direct appeal was pending, he sought an indicative ruling from the district court about whether he could withdraw his guilty plea. He argued that his plea was not knowing and voluntary because the attorney who represented him at the time of his plea had an actual conflict of interest. After a limited remand from this Court, the district court held an evidentiary hearing and determined that the attorney was not acting under an actual conflict of interest, Martinez's plea was knowing and voluntary, and he should not be permitted to withdraw his plea. Martinez appeals that decision. After careful consideration, we affirm.

**I.**

Martinez, along with five other co-defendants, was charged with one count of conspiring to possess with intent to distribute at least 500 grams or more of a mixture and substance containing methamphetamine.[1] Initially, all six defendants retained the same

_____

[1] Because we write only for the parties, who are familiar with the facts and proceedings in the case, we include only what is necessary to explain our decision. Additional facts are set forth in our earlier opinions. *See United States v.*

attorneys—Jerome Lee and Stephen Brown-Bennett of the law firm Taylor, Lee & Associates ("TLA"). Unsurprisingly, the district court found that there was a conflict of interest in the lawyers' joint representation of the co-defendants and disqualified Lee and Brown-Bennett, along with TLA, from representing any of the defendants.

After TLA was disqualified, attorney Angela Moore-Brown[2] entered an appearance to represent Martinez. While represented by Moore-Brown, Martinez pleaded guilty. The plea agreement included an appeal waiver provision that permitted Martinez to appeal his sentence only if the district court imposed a sentence "above the sentencing guideline range as calculated by the District Court." Doc. 192-1 at 15.[3] At the change-of-plea hearing, Martinez indicated that he had enough time to talk with Moore-Brown and discuss the case before pleading guilty and that he was satisfied with her services. He also affirmed that he understood that he had a right to insist on a not-guilty plea no matter what anyone else told him. And he stated that no one had threatened, pressured, forced, or intimidated him to get him to plead guilty. The district court accepted his guilty plea, finding that it was knowing and voluntary.

---

*Pacheco-Romero*, 995 F.3d 948 (11th Cir. 2021); *United States v. Pacheco-Romero*, Nos. 20-10965 & 20-10970, 2023 WL 3736877 (May 31, 2023) (unpublished).

[2] There is no indication in the record that Brown-Bennett and Moore-Brown are related.

[3] "Doc." numbers refer to the district court's docket entries.

At Martinez's sentencing hearing, the district court calculated his Sentencing Guidelines range as 360 months' to life imprisonment. Ultimately, the district court imposed a sentence of 240 months. After he was sentenced, Martinez filed a notice of appeal and was appointed new counsel.

Martinez's appellate counsel uncovered information that she believed showed that Moore-Brown acted under a conflict of interest while representing Martinez. While his direct appeal was pending, Martinez filed a motion in the district court seeking an indicative ruling about whether the district court would allow him to withdraw his guilty plea. He argued to the district court that Moore-Brown had an actual conflict of interest because she "was operating at the direction of [TLA]" while representing him. Doc. 362 at 9.

In addition to filing a motion for an indicative ruling in the district court, Martinez filed a motion in our Court seeking a limited remand to the district court. He again argued that his plea was not knowing and voluntary because Moore-Brown had a conflict of interest. He asked us to remand the case so that the district court could hold an evidentiary hearing on the conflict-of-interest issue. A panel of this Court ordered a limited remand so that the district court could resolve the issues raised in Martinez's motion for an indicative ruling—that is, whether Moore-Brown had an actual conflict of interest.

On remand, the district court held a two-day evidentiary hearing. Several witnesses testified at the hearing, including

Moore-Brown; Brown-Bennett; Lee; and Patricia Perez, Martinez's wife. Martinez himself did not testify.

Following the evidentiary hearing, the district court denied Martinez's request to withdraw his plea. After "observ[ing] the testimony of the defense witnesses and review[ing] the documentary evidence," the court was "unpersuaded" that Moore-Brown had an actual conflict of interest. Doc. 482 at 8–9. Although there was "little question" that "the TLA firm's representation of the defendants was tainted by a conflict of interest and that the TLA firm continued to interact with [Martinez] and his wife after the firm was disqualified from the case," the court concluded that "the evidence [did] not show that" Moore-Brown's representation of Martinez was tainted. *Id.* at 9.

The district court found that after Moore-Brown entered an appearance, she alone represented Martinez. The court credited her testimony that "Martinez—and not TLA—was her client" and that "the decisions that she made in the case were made in collaboration with . . . Martinez and no one else." *Id.* at 11. The court acknowledged that while representing Martinez, Moore-Brown did not spend a great deal of time with him. But the court explained that she nevertheless functioned as his attorney and worked to protect his interests including by "explor[ing] the possibility of cooperation with [her client], albeit unsuccessfully"; addressing issues related to "Martinez's role in the criminal enterprise"; and successfully negotiating a plea agreement in which the government agreed to recommend a sentence "substantially below the guidelines." *Id.*

The court considered whether TLA's conflict of interest extended to Moore-Brown because the money used to pay Martinez's legal fees came from TLA. The court rejected this argument and instead credited Moore-Brown's testimony that "she understood that the funds came from . . . Martinez and his wife and that they had authorized TLA to give those funds to her as the attorney replacing TLA." *Id.* at 10.

Based on its conclusion that Moore-Brown had no actual conflict of interest, the court denied Martinez's request to withdraw his guilty plea. This is Martinez's appeal.

**II.**

We review a district court's denial of a request to withdraw a guilty plea for abuse of discretion. *See United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *United States v. Khan*, 794 F.3d 1288, 1293 (11th Cir. 2015) (internal quotation marks omitted). For a finding to be clearly erroneous, we must be "left with a definite and firm conviction that a mistake has been committed." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (internal quotation marks omitted). When faced with conflicting testimony, we typically defer to the district court's credibility determinations because the district court "personally observes the testimony and is thus in a better position than the reviewing court to assess the credibility

23-13932                Opinion of the Court                7

of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

## III.

A defendant's guilty plea "is constitutionally valid only to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). When a defendant challenges his plea as not knowing and voluntary because the attorney who represented him at the time of the plea had a conflict of interest, he must show, among other things, that his attorney had an actual conflict of interest. *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001).

Martinez argues that Moore-Brown had an actual conflict of interest because the money used to pay her fee originated from funds that a third party originally paid to TLA. He suggests that because a third party paid Moore-Brown, she had divided loyalties and would have sought to protect the third party's interests over his.

As an initial matter, we have recognized that "the payment of legal fees by a third party does not automatically rise to the level of a conflict of interest." *United States v. Tobon-Hernandez*, 845 F.2d 277, 281 (11th Cir. 1988). And we agree with the district court that Martinez failed to show that the payment here created a conflict. Martinez's argument that Moore-Brown had a conflict depends on the premise that she *knew* that the money paid to her originated from a third party. But the district court's factual findings establish the opposite. The district court found credible Moore-Brown's

testimony that she "understood that the funds came from . . . Martinez and his wife and that they had authorized TLA to give those funds to her as the attorney replacing TLA." Doc. 482 at 10. And we defer to the district court's credibility determinations. *See Ramirez-Chilel*, 289 F.3d at 749. Because Moore-Brown understood that the money for her fee originally came from Martinez and his wife and that TLA sent her the money at their direction, she had no divided loyalty and no conflict of interest.

Martinez also argues that Moore-Brown had a conflict of interest because TLA attorneys were directing her actions while she represented him. According to Martinez, Moore-Brown was "no more than a front" for TLA's attorneys who continued, in effect, to represent him. Reply Br. 2. But the district court's factual findings established otherwise. The court expressly found that Moore-Brown, in fact, took over the case after TLA was disqualified, rejecting Martinez's argument that she was a puppet for TLA. Indeed, it expressly credited Moore-Brown's testimony that she made decisions in the case in collaboration with Martinez only. Because the district court's factual findings are not clearly erroneous, we conclude that Moore-Brown had no conflict of interest.[4]

---

[4] Martinez suggests that even if Moore-Brown had no conflict, his plea was not knowing and voluntary because his decision to plead guilty was the result of advice that he received from TLA attorneys in meetings after the firm was disqualified. But even assuming Martinez could prove that he was relying on advice from TLA when he decided to plead guilty, we have recognized that a defendant who was represented by counsel may not attack his plea because he "followed the advice of someone other than attorney representing [him] in the

Because Moore-Brown did not have an actual conflict of interest, the district court did not err when it denied Martinez's request to withdraw his plea.[5]

**AFFIRMED.**

---

matter at hand." *United States v. Pinto*, 838 F.2d 1566, 1568 (11th Cir. 1988) (rejecting argument that defendant's guilty plea was not knowing and voluntary when he was represented by criminal defense counsel at time of plea but decided to plead guilty based on flawed legal advice he received from a civil attorney who represented him in another matter).

[5] The government argues that we may affirm on the alternative ground that, even if Moore-Brown had an actual conflict of interest, Federal Rule of Criminal Procedure 11 would not have authorized the district court to allow Martinez to withdraw his guilty plea in the unique procedural posture of this case. Because we conclude that the district court did not err in concluding that Moore-Brown had no conflict of interest, we do not address the government's alternative argument.